IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JOHN H. BIEDRZYCKI,

    Petitioner,

v.                                                           Civil Action No. 1:11cv6
                                                                              Judge Keeley

TERRY O'BRIEN,

    Respondent.

## REPORT AND RECOMMENDATION

### I. Procedural History

On January 20, 2011, the petitioner, John H. Biedrzycki, a federal prisoner, filed a *pro se* petition under the provisions of 28 U.S.C. §2241, challenging, *inter alia,* the accuracy of information contained in his Pre-Sentence Report ("PSR") used to determine his Bureau of Prisons ("B.O.P.") custody classification and the security level of the institution for his incarceration. Specifically, petitioner challenges the probation officer's inclusion of a prior assault charge he contends he was not convicted of because the charge was dismissed.

On May 2, 2011, the undersigned made a preliminary review of the file, determined that summary dismissal was not warranted at that time and that the Bureau of Prisons was not a proper party to the action, and terminated it as a respondent in the case. Consequently, the respondent was directed to respond to the petition. After its request for an extension of time was granted on May 16, 2011, the respondent filed a Motion to Dismiss and Response to Show Cause order, with a Memorandum in support, on June 29, 2011.

On July 5, 2011, apparently in mistaken belief that a response to the May 2, 2011 "show cause" order was expected from him, petitioner filed a "Motion to Grant Petitioner Relief Due to Supportive Claim," essentially a re-submission of the same claim regarding the inclusion within his PSR of the assault charge argued in his §2241 petition, with nearly identical exhibits.

On July 6, 2011, a Roseboro Notice was issued.[1] On August 26, 2011, the petitioner filed a response to the Motion to Dismiss, titled "Motion for Responding to Government Exhibit #1."

Subsequently, on September 23, 2011, petitioner also filed a Motion to Suppress Evidence, requesting that this court order the Pennsylvania Court of Common Pleas of Philadelphia County to produce a "not guilty or guilty vertic [sic]" for the May 10, 1999 assault charge.

This matter, which is before the undersigned for a Report and Recommendation pursuant to LR PL P 83.09, is ripe for review.

## II. Issues Presented

### A. The Petition

**1)** Petitioner challenges the accuracy of information contained in his Pre-sentence Investigation Report ("PSR), alleging that he received an improper 'unconstitutional' four-level increase in base offense level for the 1999 aggravated assault charge for shooting the foot of one Annette Mears, when "there was inconclusive evidence to legally support the fact that Petitioner was responsible in the shooting of anyone," and he has provided "supporting information" to show that the case was dismissed.

Petitioner also raises three more claims; however, he merely lists them, but makes no further mention or argument in support of them, nor does he request relief for them, or ask that the Court direct the B.O.P. correct his PSR with regard to the second two, as he does with his first claim:

**2)** Petitioner claims that trial counsel was ineffective for taking advantage of his naivete,' limited education, and "unability [sic] to understand the English language,[2] let alone begin to understand any legal proceeding whatsoever," by "forc[ing] . . . [him] under duress and coercion" to "plead out instead of going to trial."

**3)** In his original §2241 petition, Petitioner makes an unclear claim against the U.S. Probation Department and/or the probation officer that prepared his PSR for "their frivolous investigation into the Petitioner's background, [where] they attempt to state that Petitioner has a less than junior high

---

[1] On August 18, 2011, in response to an August 8, 2011 letter from petitioner's mother alleging that petitioner's copies were thrown away by prison guards, an Order was entered directing the clerk to re-send copies of the defendant's motion to dismiss, its memorandum in support, and the Roseboro notice to the petitioner, and granting him thirty more days in which to respond. (Dkt.# 36).

[2] There is nothing in the record to suggest that petitioner does not speak or understand English; his PSR indicates that he was born and raised in the United States.

2

school education, and in fact is basically illiterate."[3] In his later-submitted §2241 petition on a court-approved form, he reframes this claim as one of "abuse of office" and deliberate misconduct by the probation officer and his B.O.P. Case Manager Coordinator, the former for including *the nolle prossed* charge on his PSR criminal history to deliberately increase his Custody Classification and Security Level, and the latter, apparently, for not responding to his administrative grievance to expunge the charge from his record, in order to change his Custody Classification as requested.

**4)** Finally, petitioner disputes the PSR's "unwarranted" one-level increase for an offense involving two firearms with an attempt to buy a third, arguing that "there were facts [sic] that substantiated any proof that in fact two firearms ever did exist[.]"[4]

However, the entire argument in petitioner's §2241 petition is devoted solely to his first claim, that the charge for shooting Annette Mears was wrongfully included in his PSR. He avers that although he is not seeking to make a change in his PSR, he is "still attempting to have part of it to be ignored by, or corrected in B.O.P. records."

As relief, he requests that this Court:

1) direct the dismissal of the May 10, 1999 charge in Pennsylvania Court of Common Pleas of Philadelphia County for the assault of Annette Mears;

2) direct the B.O.P. to remove mention of the May 10, 1999 charge of assaulting Annette Mears from his Central File;

3) an Order directing the B.O.P. to credit him with 738 days good time[5] against the 13 year, 8 month sentence imposed; and

4) arrange for him to be "immediately sent to a Low Custody Institution inway [sic] to a camp."

---

[3] This claim appears to fly in the face of petitioner's ineffective assistance of counsel claim, that counsel was able to easily coerce him into entering a guilty plea by counsel because he was so badly educated and had a limited grasp of the legal process. Petitioner's PSR reveals that he has an 8th grade education, described himself as "partially illiterate;" reported having attended classes for the learning disabled from the first through eighth grades; was effectively abandoned by his parents after their divorce when he was 9, and ended up living on his own, in parked cars or with friends, by the time he was 13. (Dkt.# 1-8 at 3, ¶32 at 11, ¶89 at 19 and ¶96 at 20). Moreover, petitioner attaches copies of February 26, 2002 reports of intellectual testing performed by the B.O.P. when he was 34 years old, indicating that his oral language tested at grade equivalency of 5.9 years; oral expression tested at 7.7, and listening comprehension tested at 2.9 on the Woodcock Johnson Revised Achievement test. His Wechsler Adult Intelligence Scale testing showed his overall IQ score to be 83, in the low average range of intellectual functioning.

[4] The undersigned presumes petitioner intended to say that "there were *no* facts to substantiate" the proof that the guns existed.

[5] Nowhere in his petition or anywhere else in the record does Petitioner explain what grounds he believes he has that entitle him to this good time credit.

3

### B. Motion to Dismiss

In support of his Motion to Dismiss, the respondent argues that

1) the petitioner's claim[6] is not cognizable as a habeas petition;

2) because the U.S. Probation Office, the only agency with the authority to correct petitioner's PSR, has already refused petitioner's November, 2009 request to correct its alleged errors, the B.O.P. has no basis upon which to effect any changes in his central file.

3) B.O.P. classifications are within the discretion of the Attorney General as delegated to the Director of the B.O.P. Federal inmates have no constitutional right to a particular classification or to incarceration in any particular facility.

4) Because petitioner has not alleged a violation of any law or of his constitutional rights, his petition should be dismissed.

### C. Petitioner's Response to Motion to Dismiss

Petitioner denies that he is seeking relief pursuant to 28 U.S.C. § 2255.

He reiterates his claims of federal government and Probation Department misconduct, stating that he has provided "documented evidence" to show the dismissal of the charge regarding the shooting of Annette Mears, insisting that the "Federal Government and Probation found Petitioner guilty of the said charges based on cooperating witness's [sic] statements."[7] He alleges that this misconduct has affected his custody classification within the B.O.P. He states he has exhausted his administrative remedies, received no "justification" from the B.O.P., and has filed a writ of mandamus which was dismissed. He denies recall of ever proffering to the charges regarding Mears. He complains that he is unable to participate in any prison programs to take time off his sentence.

---

[6] For purposes of its response, the respondent assumed, as does the undersigned, that the only one of petitioner's claims at issue is that of the allegedly dismissed charge for shooting Annette Mears, because petitioner has not further addressed any of his other claims, nor requested any relief regarding them. Moreover, all of petitioner's requests for informal resolution and formal administrative grievances filed, from July, 2009 (Dkt.# 1-2 at 19) and continuing until he exhausted his administrative remedies on January 31, 2011 (Dkt.# 17-2 at 5), only address this one issue.

[7] The PSR states that cooperating witnesses informed the government that in the spring of 1999, Annette Mears, the victim of the shooting, failed to show up for several city court appearances related to the shooting. The witnesses averred that they were present on separate occasions when Biedrzycki paid Ms. Mears cash not to show up for court to testify against him. (Dkt.# 1-8, ¶21 at 9-10).

4

He claims that if he had been "Professionaly [sic] Revied [sic]" by the Probation Department, he would never have been in a federal penitentiary and would never have been stabbed eight times.

As relief, he asks for "declaratory, injunctive and nominal damages." Specifically, he requests that the court direct the B.O.P. to amend the charges regarding Annette Mears from his Central File; order the B.O.P. to restore all of 738 days of good time credit against his sentence; and send him to a "low custody institution in way to a camp" for the remainder of his sentence.

### III. Standard of Review

In ruling on a motion to dismiss, the Court must accept as true all well-pleaded factual allegations. Walker v. True, 399 F.w3d 315 (4th Cir. 2005). Furthermore, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law, that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Additionally, a district court should construe *pro se* petitions liberally. See Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978).

### IV. Analysis

### A. Exhaustion

To the extent that exhaustion has been applied to habeas corpus, such a requirement is not mandated by statute. Instead, exhaustion prerequisites in habeas corpus actions arising under § 2241 are merely judicially imposed. See, e.g., Martinez v. Roberts, 804 F.2d 570 (9th Cir. 1996) (federal inmates are required to exhaust their administrative remedies prior to filing a 2241 petition); Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3rd Cir. 1996) (same); McCallister v. Haynes, 2004 WL 3189469 (N.D.W.Va. 2004) (same). Because the exhaustion requirement is only judicially imposed in habeas proceedings, it follows that a Court has the discretion to waive that requirement in certain

circumstances. See LaRue v. Adams, 2006 WL 1674487 *8 (S.D.W.Va. June 12, 2006) (citing Smith v. Angelone, 111 F.3d 1126, 1129-31 (4th Cir.) cert. denied, 521 U.S. 1131 (1997)). Indeed, a number of courts have found that the exhaustion requirement may be waived where the administrative process would be futile. See Id. at *5-*7.

However, even in cases where the administrative process is unlikely to grant an inmate relief, Courts have enforced a longstanding policy favoring exhaustion. See Alexander v. Hawk, 159 F.3d 1321, 1327-28 (11th Cir. 1998). In particular, it has been noted that the following policies are promoted by requiring the exhaustion of administrative remedies: "(1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources . . . ; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that 'frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.'" Id. at 1327 (citation omitted).

In this case, the petitioner has exhausted his administrative remedies. The materials provided by the petitioner show that he began to attempt resolution of this issue by informal means on July 20, 2009, by writing a letter to the Warden, detailing all of the Inmate Request to Staff "cop outs" he had submitted to various staff members, to no avail. (Dkt.# 1-2 at 19). When he did not receive the answer he wanted, he resorted to filing his first Administrative Remedy on May 20, 2010, only to be told that his offense had been scored properly. (Dkt.# 1-2 at 6). He filed successive levels of appeals until he finally received his response to Administrative Remedy No. 589654-A3 from the Administrator of National Inmate Appeals, on January 31, 2011, again explaining that because during the commission of the crime for which he was charged, he fired a handgun which struck a female in the foot, he had properly earned the 4-point enhancement. Accordingly, the Administrator

for the National Inmate Appeals found that his custody classification score was appropriate and in accordance with the B.O.P. Program Statement 5100.08.

It is apparent that petitioner was dissatisfied with the B.O.P.'s response, because he filed this petition. However, it is clear that the petitioner's underlying claims are without merit and should be dismissed with prejudice.

**B. <u>Custody Classification and Security Level</u>**

The petitioner alleges that, based on the inclusion within his PSR of a May 1999 charge in the Court of Common Pleas of Philadelphia County, (later "*nolle prossed*") for shooting Ms. Annette Mears in the foot, he was wrongfully assessed a 4-level increase in his base offense level, resulting in a higher B.O.P. custody classification based on the "severity of violence" calculation set forth in the B.O.P. Program Statement 5100.08. Because of the allegedly wrongful consideration of this crime was used to determine his B.O.P. custody classification, he argues that he has been placed in higher-security institutions than would otherwise be warranted. He avers that he is entitled to immediate transfer to a low security institution, where he will be able to participate in programs he believes would entitle him to earlier release.

A review of the PSR attached to petitioner's original §2241 petition reveals that the 4-point bump in base offense level that petitioner has been so strenuously objecting to for the past two and a half years is proper.

One of the five charges (contained in one indictment and one information, consolidated for purposes of plea and sentencing) that petitioner pled guilty to on March 26, 2001, was Count One (E.D. P.A. Dkt.#1)(2:01-cr-00163), possession of firearms and ammunition by a convicted felon. (Dkt.# 1-8 at 2). Paragraph 39 of his PSR reads: "Specific Offense Characteristic: One of the firearms that the defendant was held accountable for under §1B1.3 was used in connection with another felony, the shooting of Annette Mears. Under U.S.S.G. 2K2.1(b)(5), four levels are added." (<u>Id</u>., ¶39 at 13).

The U.S.S.G Application Note 14(C) to Subsection 2K2.1(b)(5),"in connection with," defines "another felony offense," for purposes of subsection (b)(5) as meaning "any federal, state or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, *regardless of whether a criminal charge was brought, or a conviction obtained*." (emphasis added).

Accordingly, the U.S.P.O.'s response to petitioner's challenge is correct. The fact that petitioner was never actually legally determined to be guilty of shooting Ms. Mears is irrelevant; because the gun used in the shooting was one of the guns he was charged with and pled guilty to illegally possessing, the 4-level enhancement was permissible. There are no errors in the accuracy the calculation of petitioner's offense level and criminal history category.

Because petitioner has already received determination from the only agency with the authority to correct his PSR, this court is without authority to grant the relief he requests. The B.O.P. does not have the authority to change his PSR. Because petitioner has not alleged a violation of any law or of his constitutional rights, he has failed to state a claim upon which relief can be granted, and this claim should be dismissed.

**C. Ineffective Assistance of Counsel**

Petitioner's Ground Two claim that trial counsel was ineffective for taking advantage of his educational and intellectual limitations by coercing him to plead guilty instead of going to trial, in addition to being insufficiently pled, is not a proper claim for a habeas corpus petition.

A motion filed under §2241 necessarily must pertain to "an applicant's commitment or detention," rather than the imposition of a sentence. Compare 28 U.S.C. §2242 (§2241 application for writ of habeas corpus must allege facts concerning the applicant's commitment or detention) and 28 U.S.C. §2255 (motions to vacate a sentence brought under §2255 are collateral attacks upon the imposition of a prisoner's sentence). Therefore, to the extent that the petitioner raises allegations concerning ineffective assistance of counsel and/or any errors in his underlying criminal proceeding,

those are issues that could have been raised on appeal[8] or in a Motion To Vacate Pursuant to 28 U.S.C. § 2255 filed with the sentencing court.[9] Petitioner did not raise this issue in his § 2255 motion and he is now barred from raising it in under § 2241.

**D. <u>Alleged Misconduct by the U.S. Probation Department and Case Manager Coordinator</u>**

Petitioner's Ground Three claims against the U.S. Probation Department, the probation officer that prepared his PSR, and his former Case Manager Coordinator have no merit and are not proper claims under §2241. 28 U.S.C. §2241 permits a district court to grant a writ of habeas corpus to a prisoner who is "in custody in violation of the Constitution or laws or treaties of the United States." A petition for habeas corpus under §2241 is the proper method to challenge the execution of a federal sentence that affects the duration of confinement. <u>U.S. v. Little</u>, 392 F.3d 671, 679 (4th Cir. 2004). This claim does not raise grounds that could be construed as a challenge to the execution of his federal sentence or as impacting the duration of his confinement. Here, petitioner is merely challenging the B.O.P.'s reliance on information in his PSR that was used to determine his custody classification and security level, neither of which affect the duration of his sentence. Moreover, because it has already been shown that there was no error in the calculation of petitioner's criminal history category, petitioner has proven no violation of law or of any constitutional right, there can be no wrongdoing by either the probation officer or the Probation Department for failing to correct it. Likewise, because there was no error, his former Case Manager Coordinator at U.S.P. McCreary cannot be faulted for failing to change petitioner's Custody Classification regarding the alleged error. These claims should be dismissed.

---

[8] Petitioner's appellate counsel filed a brief on his behalf pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1968) with the Third Circuit Court of Appeals, raising jurisdictional issues regarding the trial court, validity of the plea and legality of the sentence. The Third Circuit affirmed the judgment of the Eastern District of Pennsylvania on November 26, 2002. <u>See</u> <u>U.S. v. Biedrzycki</u>, 52 F. App'x. 182 (3rd Cir. 2002).

[9] Petitioner's March 30, 2007 Motion to Vacate under 28 U.S.C. § 2255, filed in both of his criminal cases, was dismissed as untimely on December 7, 2007, in U.S. District Court for the E.D. of Pennsylvania. (E.D. P.A. Dkt.# 19) (2:01cr163) and (E.D. P.A. Dkt.# 52) (2:00cr558).

### E. Alleged Unwarranted One-Level Increase for Firearms Violations

Petitioner's Ground Four claim disputing his PSR's including an "unwarranted" one-level "Special Offense Characteristic" increase for an offense involving two firearms with an attempt to buy a third (Dkt.# 1-8, ¶38 at 13), as having insufficient evidence to support the finding that the firearms even existed, in addition to being insufficiently-pled, is also not a proper claim for a habeas corpus petition for the same reasons as previously stated *supra*. Moreover, the claim lacks merit; petitioner apparently overlooks the fact that he entered a plea admitting that he did in fact possess these firearms.

### V. Recommendation

For the foregoing reasons, the undersigned recommends that the respondent's Motion to Dismiss (Dkt.# 28) be **GRANTED** and the petitioner's § 2241 petition be **DISMISSED WITH PREJUDICE**.

Accordingly, the undersigned further recommends that petitioner's pending motions

1) to grant petitioner relief due to supportive claim (Dkt.# 30);

2) for responding to Government Exhibit #1 (Dkt.# 39); and

3) to suppress evidence (Dkt.# 40)

all be **DISMISSED as moot**.

Within **fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of such objections should also be submitted to the United States District Court. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk is further directed to provide a copy of this Report and Recommendation to any counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: October 14, 2011

                                              /s/ James E. Seibert
                                              JAMES E. SEIBERT
                                              UNITED STATES MAGISTRATE JUDGE